**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF IOWA**
**CENTRAL DIVISION**

HAWKEYE LAND COMPANY,

Plaintiff,

vs.

ITC MIDWEST LLC and ITC
HOLDINGS, CORP.,

Defendants.

No. C 15-3119-MWB

**MEMORANDUM OPINION AND
ORDER DENYING IN PART AND
GRANTING IN PART
DEFENDANTS' MOTION TO
DISMISS**

_____

**TABLE OF CONTENTS**

I.     *FACTUAL AND PROCEDURAL BACKGROUNDS* ............................... 2

II.    *ISSUES* .................................................................... 4

III.   *DISCUSSION* ............................................................... 4
       A.   *Standard Of Review For Motion To Dismiss* ................................. 4
       B.   *Unreasonable Interference With Private Property* ........................... 6
       C.   *Tortious Interference With Prospective Economic Benefit* ............... 10
       D.   *Malicious Prosecution* ......................................................... 15
       E.   *Abuse Of Process* .............................................................. 19
       F.   *Claim For Attorneys' Fees* .................................................... 22
       G.   *Whether To Dismiss ITC Holdings From This Litigation* ................. 24

IV.    *CONCLUSION* .............................................................. 27

In this Memorandum Opinion and Order, I address the motion to dismiss filed by the defendants, ITC Midwest LLC (ITC Midwest) and ITC Holdings Corp. (ITC Holdings), on June 11, 2015 (docket no. 6). Defendants move to dismiss, with prejudice, Counts III-VI of the plaintiff's petition, the claim for attorneys' fees, and ITC Holdings from this action.

## I.     FACTUAL AND PROCEDURAL BACKGROUNDS

Plaintiff Hawkeye Land Company (Hawkeye), is an Iowa corporation that "owns the right to sell easements across active railroad tracks," in certain areas in the Midwest, including Franklin County, Iowa. *See* Plaintiff's Resistance (docket no. 9), 3; *see also Hawkeye Land Co. v. Iowa Utils. Bd.*, 847 N.W.2d 199, 201 (Iowa 2014). The defendants are ITC Midwest, a Michigan limited liability company, and ITC Holdings, a Michigan corporation. Plaintiff's Resistance Brief at 3. ITC Midwest is an independent electric transmission company, and ITC Holdings is the parent company and sole member of ITC Midwest. *See id.* at 2–3, 18; *see also Hawkeye Land Co.*, 847 N.W.2d at 201. The present dispute arose in 2009 when the Iowa Utilities Board (IUB) permitted ITC Midwest to use a railroad-crossing statute (crossing statute), Iowa Code § 476.27,[1] to construct three 161 kilovolt transmission lines on Hawkeye's property in Franklin County, Iowa. *Hawkeye Land Co.*, 847 N.W.2d at 201.

On August 7, 2009, Hawkeye contested ITC Midwest's actions by filing a complaint with the IUB. *Id.* An Administrative Law Judge (ALJ) rejected Hawkeye's

---

[1] The crossing statute allows public utilities to follow a "pay-and-go" procedure—that is, a utility pays the property owner $750.00 for each crossing. *See Hawkeye Land Co.*, 847 N.W.2d at 203, 205. The crossing statute was used by the defendants when they sent a crossing-statute notice to Hawkeye along with $750.00 per crossing.

claims in a proposed decision on October 14, 2010: it "upheld the use of the pay-and-go procedure and denied compensation beyond the $750.00 per crossing." *Id.* at 201, 205. Hawkeye appealed the ALJ's proposed decision to the IUB. "IUB, asserting interpretative authority over section 476.27, reached the same conclusions in its final decision, and the district court affirmed on judicial review." *Id.* at 201, 206. Hawkeye appealed, and the Iowa Supreme Court retained the appeal.

The Iowa Supreme Court summarized Hawkeye's contentions on appeal as follows: "[Hawkeye] contends the crossing statute does not apply to it or to ITC Midwest, because [Hawkeye] is not a 'railroad' and ITC Midwest is not a 'public utility' within the meaning of the statute"; $750.00 per crossing of Hawkeye's easement is "not just compensation"; and "the pay-and-go procedure [under the crossing statute] is unconstitutional under the takings clause of article I, section 18 of the Iowa Constitution." *Id.* After thoroughly analyzing the parties' arguments, the Iowa Supreme Court determined: (1) the IUB lacks interpretive authority as to the crossing statute, Iowa Code § 476.27; (2) Hawkeye is a railroad corporation's successor in interest under the crossing statute and, thus, the statute applies to Hawkeye's easement-crossing rights; and (3) ITC Midwest is not a public utility company within the meaning of the crossing statute,[2] and thus, it is not permitted to use the pay-and-go procedure. *Hawkeye Land Co.*, 847 N.W.2d at 209, 213, 219. After the case was remanded to the IUB by the district court, the IUB ordered that its prior orders be vacated in accordance with the Iowa Supreme

---

[2] As the defendants point out, since the decision of *Hawkeye Land*, the Iowa legislature, during the next legislative session, "amended the Crossing Statute to include an 'independent transmission company' (such as [ITC Midwest]) as a 'public utility' authorized to use the Crossing Statute." Defendants' Reply Brief (docket no. 17), 2 (citing IOWA CODE §§ 476.27(1)(d)-(e)).

Court's decision.  *See In Re: Hawkeye Land Co. v. ITC Midwest LLC*, No. FCU-2009-0006, 2014 WL 4374058, *5–*6 (Iowa U.B. Aug. 29 2014) (slip op.).

Following the Iowa Supreme Court's decision, on June 6, 2015, Hawkeye filed a six-count petition (docket no. 4) in Franklin County, Iowa District Court, against ITC Midwest and ITC Holdings regarding the same three railroad crossings.  Hawkeye alleged counts of (1) trespass; (2) unjust enrichment; (3) unreasonable interference with private property; (4) tortious interference with prospective economic benefit; (5) malicious prosecution; and (6) abuse of process.  On June 5, 2015, the defendants removed this case to the United States District Court for the Northern District of Iowa (docket no. 1).  On June 11, 2015, the defendants filed a motion to dismiss Counts III-VI of Hawkeye's petition, Hawkeye's claim for attorneys' fees, and ITC Holdings from this litigation.  Hawkeye filed its resistance brief on June 24, 2015 (docket no. 9), following which the defendants filed their reply brief on July 6, 2015 (docket no. 17).

## II.     ISSUES

In this Memorandum Opinion and Order, I address whether Hawkeye has stated claims upon which relief may be granted as to its claims for: (1) unreasonable interference with private property (Count III); (2) tortious interference with prospective economic benefit (Count IV); (3) malicious prosecution (Count V); (4) abuse of process (Count VI); (5) attorneys' fees; and (6) relief against ITC Holdings.  I also address whether oral argument is necessary in this case.

## III.     DISCUSSION

### A.     Standard Of Review For Motion To Dismiss

The defendants move to dismiss Hawkeye's action pursuant to Federal Rule of Civil Procedure 12(b)(6).  Rule 12(b)(6) authorizes a pre-answer motion to dismiss for

"failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6).
As the Eighth Circuit Court of Appeals has explained,

> We review *de novo* the district court's grant of a motion to dismiss, accepting as true all factual allegations in the complaint and drawing all reasonable inferences in favor of the nonmoving party. *See Palmer v. Ill. Farmers Ins. Co.*, 666 F.3d 1081, 1083 (8th Cir. 2012); *see also* FED. R. CIV. P. 12(B)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (internal quotation omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

*Richter v. Advance Auto Parts, Inc.*, 686 F.3d 847, 850 (8th Cir. 2012); *accord Freitas v. Wells Fargo Home Mortg., Inc.*, 703 F.3d 436, 438 (8th Cir. 2013) (quoting *Richter*, 686 F.3d at 850); *Whitney v. Guys, Inc.*, 700 F.3d 1118, 1128 (8th Cir. 2012) (stating the same standards).

Courts consider "plausibility" under this *Twom-bal* standard[3] by "'draw[ing] on [their own] judicial experience and common sense.'" *Whitney*, 700 F.3d at 1128 (quoting *Iqbal*, 556 U.S. at 679). Also, courts must "'review the plausibility of the plaintiff's claim as a whole, not the plausibility of each individual allegation.'" *Id.* (quoting *Zoltek Corp. v. Structural Polymer Grp.*, 592 F.3d 893, 896 n.4 (8th Cir. 2010)). The Eighth

---

[3] The "*Twom-bal*" standard is my nickname for the "plausibility" pleading standard established in the United States Supreme Court's twin decisions on pleading requirements, and standards for dismissal for failure to state a claim upon which relief can be granted pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, for claims in federal court. *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007); *see also Iqbal*, 556 U.S. at 129 S.Ct. 1937.

Circuit Court of Appeals has refused, at the pleading stage, "to incorporate some general and formal level of evidentiary proof into the 'plausibility' requirement of *Iqbal* and *Twombly*." *Id.* Nevertheless, the question "is not whether [the pleader] might at some later stage be able to prove [facts alleged]; the question is whether [it] has adequately asserted facts (as contrasted with naked legal conclusions) to support [its] claims." *Id.* at 1129. Thus,

> [w]hile this court must "accept as true all facts pleaded by the non-moving party and grant all reasonable inferences from the pleadings in favor of the non-moving party," *United States v. Any & All Radio Station Transmission Equip.*, 207 F.3d 458, 462 (8th Cir. 2000), "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Iqbal*, 556 U.S. at 678, 129 S.Ct. 1937 (quoting [*Bell Atl. Corp. v.] Twombly*, 550 U.S. [544,] 555, 127 S.Ct. 1955 [(2007)]).

*Gallagher v. City of Clayton*, 699 F.3d 1013, 1016 (8th Cir. 2012); *Whitney*, 700 F.3d at 1128 (stating the same standards).

With the above standards in mind, I turn to consider the defendants' motion to dismiss. In each section below, I initially discuss the requirements for the claim at issue, following which I analyze whether Hawkeye's factual allegations sufficiently state a plausible claim.

### B. Unreasonable Interference With Private Property

The first issue I consider is whether Hawkeye has stated a claim upon which relief may be granted as to its claim for unreasonable interference with private property. According to the defendants, "[a]n action for unreasonable interference with private

property *is a private nuisance action*, as distinguished from a trespass claim."[4] Defendants' Brief In Support Of Defendants' Motion To Dismiss (docket no. 6-1), 7 (citing *Bates v. Quality Ready-Mix Co.*, 154 N.W.2d 852, 857 (Iowa 1967)). The defendants argue that the plaintiffs' allegations in Count III of their complaint do not support a nuisance claim because Hawkeye has failed to allege "any intangible invasion of its property," such as offensive smells or noises, pollution, etc. *Id.* at 8. The defendants contend Hawkeye has merely reasserted its trespass claim. *Id.* Hawkeye responds by arguing that it "alleged an actionable unreasonable interference with private property claim ('abusive condemnation') upon which relief can be granted in Count III, and therefore, the Court should not dismiss it."[5] Plaintiff's Resistance Brief at 8. In

---

[4] "The term 'private nuisance' refers to the (private) interests invaded." *Ryan v. City of Emmetsburg*, 4 N.W.2d 435, 438 (Iowa 1942).

[5] Hawkeye relabeled its "unreasonable interference with private property" claim as "abusive condemnation":

> Hawkeye has alleged an actionable unreasonable interference with private property claim ("abusive condemnation") upon which relief can be granted in Count III, and therefore, the Court should not dismiss it. Count III is a valid claim for abusive condemnations, which is a distinct cause of action in Iowa. *See generally Nadler v. Mason*, 387 N.W.2d 587 (Iowa 1986); *Osborn v. City of Cedar Rapids*, 324 N.W.2d 471 (Iowa 1982); *Skaff v. Sioux City*, 168 N.W 2d 789 (Iowa 1969).

Plaintiff's Resistance Brief at 8. None of the authorities cited by Hawkeye use the "abusive condemnation" language. Nor did I find any Iowa case law employing those terms. The defendants are correct that the cases relied on by Hawkeye—*Nadler*, *Osborn*, and *Skaff*—involve distinguishable facts where city defendants "repeatedly started, then stopped the condemnation process, until either the city completed condemnation or the plaintiff landowner brought *a mandamus action to compel condemnation proceedings*."

addition, Hawkeye argues that the defendants mislabel Count III as a private nuisance claim. *Id.* at 7. Even if I decide that Hawkeye's claim is a private nuisance claim, however, Hawkeye argues that it also correctly pled a private nuisance claim.

The Iowa legislature enacted a statutory nuisance provision under Iowa Code § 657.1, which is supplemented by the common law of nuisance. *Miller v. Rohling*, 720 N.W.2d 562, 567 (Iowa 2006). The Iowa legislature defined a "nuisance" under Iowa Code chapter 657.1 as follows:

> Whatever is injurious to health, indecent, or unreasonably offensive to the senses, or *an obstruction to the free use of property, so as essentially to interfere unreasonably with the comfortable enjoyment of life or property, is a nuisance*[.]

IOWA CODE § 657.1 (emphasis added). Common law principles governing "private nuisances" supplement the above skeletal statutory provisions:

> A private nuisance is "an actionable interference with a person's interest in the private use and enjoyment of the person's land." Parties must use their own property in such a manner that they will not unreasonably interfere with or disturb their neighbor's reasonable use and enjoyment of the neighbor's property.
>
> Whether a lawful business is a nuisance depends on the reasonableness of conducting the business in the manner, at the place, and under the circumstances in question. Thus the existence of a nuisance does not depend on the intention of

---

Defendants' Brief at 2. The defendants are not municipalities or governmental bodies and Hawkeye did not assert a *mandamus* action to compel condemnation proceedings by the defendants. *See Phelps v. Board of Sup'res of Muscatine County*, 211 N.W.2d 274, 276 (Iowa 1973) ("We have held on a number of occasions that mandamus is a proper remedy to compel condemnation when there has been a taking of private property for public use without just compensation.") (citations omitted). In agreement with the defendants, Hawkeye's unreasonable interference with private property claim is a private nuisance cause of action.

> the party who created it. Rather, it depends on the following
> three factors: priority of location, the nature of the
> neighborhood, and the wrong complained of.

*Perkins v. Madison County Livestock & Fair Ass'n*, 613 N.W.2d 264, 271 (Iowa 2000)

(quoting *Weinhold v. Wolff*, 555 N.W.2d 454, 459, in turn quoting *Bates*, 154 N.W.2d

at 857). "From this discussion, it is clear that whether a party has created and maintained

a nuisance is ordinarily a factual question." *Weinhold*, 555 N.W.2d at 459 (citing *Bates*,

154 N.W.2d at 857).

Nuisance and trespass are related doctrines, but there are differences between

them. On the one hand, a claim of trespass involves "an actionable invasion of interests

in the exclusive possession of land," and "an actual invasion by tangible matter." *Ryan*,

4 N.W.2d at 438. On the other hand, a claim of nuisance is "an actionable invasion of

interests in the use and enjoyment of land," the invasion "is usually by intangible

substances, such as noises or odors," and "[i]t usually involves the idea of continuance

or recurrence over a considerable period of time." *Id.* Despite these understood

differences, the Iowa Supreme Court has explained, "[t]he line of demarcation between

private nuisance and trespass is not always clear." *Id.* at 438–39. A trespass and a

nuisance can arise from the same occurrence (*e.g.*, cases involving the flooding of land),

and "[i]n some instances trespasses of continuing character have been dealt with as

nuisances." *Id.* at 439.

In this case, ITC Midwest's three power lines, which constitute *tangible* matter,

physically cross Hawkeye's property. Hawkeye purchased the real estate before the

defendants constructed the power lines. Although recognizing a nuisance generally

involves *intangible* substances, Hawkeye cites the less common nuisance cases involving

*tangible* substances, such as dust. Plaintiff's Resistance Brief at 9–10 (citing *Miller*, 720

N.W. at 565; *Bates*, 154 N.W.2d at 858). I also note that this case is not unlike the

example in which person A's tree branches and roots constitute a private nuisance by encroaching onto person B's property. *See, e.g.*, *Lane v. W.J. Curry & Sons*, 92 S.W.3d 355, 366 (Tenn. 2002) (finding defendant's tree constituted a private nuisance where it "adversely affected the plaintiff's reasonable and ordinary use and occupation of her home, not to mention pos[ed] hazards to the plaintiff's health and safety.").[6] Hawkeye alleges in its petition that its real estate was being used to develop utility projects. *Id.* at 10. By erecting the three power lines, the defendants have, according to Hawkeye, substantially interfered with Hawkeye's use and enjoyment of its private property. *Id.* This is because Hawkeye is unable to "develop[ ] its property as it pleases." *Id.* Hawkeye also pled that the power lines have remained on its property, without its permission, for a continuing period of six years. *Id.* at 8, 10.

Hawkeye has sufficiently pled facts to state a claim for unreasonable interference with private property. Thus, defendants' motion to dismiss Count III is denied.

### C. Tortious Interference With Prospective Economic Benefit

The second issue I consider is whether Hawkeye has stated a claim upon which relief may be granted as to its claim for tortious interference with prospective economic benefit. The defendants argue Hawkeye's factual allegations are "deficient" as to each

---

[6] The Supreme Court of Tennessee noted that "Tennessee's definition of private nuisance is typical of how most states have defined the tort, both now and in the past." *Lane*, 92 S.W.3d at 365; *see also* RESTATEMENT (SECOND) OF TORTS § 821D (1979). In *Lane*, it was held that the defendant's trees satisfied Tennessee's definition of a private nuisance, *i.e.*, "'anything which annoys or disturbs the free use of one's property, or which renders its ordinary use or physical occupation uncomfortable . . . [and] extends to everything that endangers life or health, gives offense to the senses, violates the laws of decency, or obstructs the reasonable and comfortable use of property.'" *Lane*, 92 S.W.3d at 364 (citation omitted).

element of its tortious interference claim.  Defendants' Brief at 9.  In reply, Hawkeye makes the case that it sufficiently pled facts, which allow me to draw the reasonable inference that the defendants intentionally interfered with Hawkeye's prospective business relations.  *See* Plaintiff's Resistance Brief at 12.  Thus, Hawkeye contends, Count IV of their petition should not be dismissed.  *See id.*

The parties agree that, under Iowa law, there are five elements of a claim for tortious interference with prospective economic benefit:

> 1. A prospective contractual or business relationship;
>
> 2. the defendant knew of the prospective relationship;
>
> 3. the defendant intentionally and improperly interfered with the relationship;
>
> 4. the defendant's interference caused the relationship to fail to materialize; and
>
> 5. the amount of resulting damages.[7]

*Iowa Coal Min. Co., Inc. v. Monroe County*, 555 N.W.2d 418, 438 (Iowa 1996).  The Iowa Supreme Court has "recognized the tort of interference with prospective business advantage, explaining that Iowa law thereby protects expectancies of future contractual

---

[7] Tortious interference with prospective economic benefit is a recognized tort in Iowa. *See Clarke v. Figge*, 181 N.W.2d 211, 213 (Iowa 1970) (noting that "the doctrine [for interference with prospective business relationships] is an extension of the rule imposing liability for inducing breaches of existing contracts[.])"  This tort goes by other labels, including the tort of "interference with prospect advantage" and "interference with reasonable economic expectancies[.]"  *Id.* (citations omitted).  The main difference between the theories of intentional interference with *existing* contracts and intentional interference with *prospective* business relationships is "the nature and degree of proof required on the element of motive."  *Burke v. Hawkeye Nat. Life Ins. Co.*, 474 N.W.2d 110, 114 (Iowa 1991).  "In a claim of intentional interference with a prospective business advantage, plaintiff must prove that the defendant intended to financially injure or destroy the plaintiff."  *Id.* (citations omitted).  By contrast, "[i]n cases of interference with existing contracts, proof of such purpose is not essential."  *Id.* (citations omitted).

relations such as the 'opportunity of obtaining customers.'" *North v. State*, 400 N.W.

2d 566, 569 (Iowa 1987) (citations omitted); *see also Page County Appliance Ctr. v.*

*Honeywell*, 347 N.W.2d 171, 177 (Iowa 1984).

The parties' briefs focus primarily on the first element of Hawkeye's tortious

interference with prospective economic benefit claim. Relying on *Nesler v. Fisher and*

*Co.*, 452 N.W.2d 191, 198–99 (Iowa 1990), the defendants argue that the "plaintiff must

identify the third party with whom there was a prospective business or contractual

relationship for the first element to be satisfied." Defendants' Brief at 9. In response,

Hawkeye admits that, in *Nesler*, 452 N.W.2d at 198–99, the case relied upon by the

defendants, the jury instructions required "a third-party's name," but that "case does not

require such specificity in the mere pleadings." Plaintiff's Resistance Brief at 11. In

addition, in *Nesler*, Hawkeye asserts that the Iowa Supreme Court "found it proper to

submit the issue [of whether the defendants tortiously interfered with prospective business

contracts] to the jury without identifying the potential future investors who could not have

been known at the time of the tortious conduct." *Id.* (citing *Nesler*, 452 N.W.2d at 195–

96).

In *Hagen v. Siouxland Obstetrics & Gynecology, P.C.*, 934 F.Supp.2d 1026, 1049

(N.D. Iowa 2013), a case that recently came before me, the parties similarly disputed

whether the plaintiff "provided sufficient evidence of identifiable third parties" in relation

to the plaintiff's tortious interference with prospective business advantage claim. *Id.*

There, I explained that "the Iowa Supreme Court has not specifically addressed this

element of the cause of action." *Id.* However, other courts in different jurisdictions

persuasively addressed the issue, and I noted that "[i]n making a claim for tortious

interference with prospective business relationships, it has been held that the prospective

relationship may be with an identifiable class of third persons, not just an identified third

person." *Id.* (citing *Hayes, M.D. v. Northern Hills General Hospital*, 590 N.W.2d 243,

250 (S.D. 1999); *Lamdin v. Aerotek Commercial Staffing*, 2010 WL 3896154, *6 (E.D. Tenn. 2010)). As I further explained in *Hagan*, in *Hayes*, the Supreme Court of South Dakota found that requiring third parties to be identified by name "'would render the tort for the most part, a nullity and, in all actuality, never allow a plaintiff to proceed with its claim beyond summary judgment especially if the business enterprise is dependent upon a large pool of clientele.'" *Id.* (quoting *Hayes, M.D.*, 590 N.W.2d at 250). Hawkeye has pled sufficient facts as to its prospective business relationships with third parties to develop utility projects on its property in Franklin County, Iowa, which constitutes "an identifiable class of third persons." *See id.* Thus, I find that the first element was sufficiently pled at the motion to dismiss stage.

As to the second element, the defendants contend that Hawkeye failed to allege that ITC had knowledge of "any prospective contract." Defendants' Brief at 9. In reply, Hawkeye directs my attention to an Iowa Supreme Court decision, *Revere Transducers, Inc. v. Deere & Co.*, 595 N.W.2d 751, 764 (Iowa 1999), and interprets it to mean that "knowledge of a *specific* contract is not necessary to support a cause of action even in the context of interference with an existing contract." Plaintiff's Resistance Brief at 11. In *Nesler*, the Iowa Supreme Court found that this second element was met by a showing that the defendants "had reason to know" of potential contracts and a "binding contract" was unnecessary for a claim of interference with prospective business advantage. *Nesler*, 452 N.W.2d at 196; *see also Tompkins Lawncare, Inc. v. Bucholz*, No. 03-1284, 2005 WL 597016, *2 (Iowa Ct. App. 2005) (unpublished op.). Here, the defendants were allegedly aware of Hawkeye's use of its property to develop competing power lines and get paid by third parties. *See* Plaintiff's Resistance Brief at 12. Therefore, ITC Midwest, an experienced independent transmission company, either knew or "had reason to know" of potential business relations and contracts Hawkeye may have formed. *Nesler*, 452 N.W.2d at 196. Thus, I find that the second element was sufficiently pled.

As to the third element, the defendants argue that Hawkeye failed to provide sufficient facts to support the assertion that the defendants "'intentionally and improperly interfered'" with one of Hawkeye's economic relationships. Defendants' Brief at 9. Hawkeye failed to allege, the defendants contend, "how [the defendants] interfered, what [the defendants] interfered with or how it was improper." *Id*. According to Hawkeye, its projects depend on its real estate, and the defendants' power lines interfere with every potential user. Plaintiff's Resistance Brief at 12. In further support of its allegations, Hawkeye persuasively argues that it pled to "own[ing] real estate," the defendants "intentionally ignored relevant law to install power lines on that real estate to injure Hawkeye," and the defendants know of "Hawkeye's use to develop competing power lines and be paid by third parties[.]" *Id*. The above facts support Hawkeye's assertion that the defendants acted with a purpose to financially "injure or destroy Hawkeye." Plaintiff's Petition at 5. This is because, first, the defendants allegedly knew their intrusions onto Hawkeye's property would interfere with other prospective projects by paying third parties on that property, and, second, Hawkeye would only receive a nominal fee of $750.00 for each of the defendants' three crossings based on the defendants' use of the crossing statute, Iowa Code § 476.27. *See Iowa Coal Min. Co., Inc.*, 555 N.W.2d at 438 (noting that the third element requires "proof that the defendant intended to financially injure or destroy the plaintiff." (citing *Burke*, 474 N.W.2d at 115)). Hawkeye's pled facts are sufficient to infer that the defendants "intentionally and improperly interfered" with Hawkeye's prospective economic relationships. Thus, I find that the third element was sufficiently pled.

As to the fourth element, the defendants contend that Hawkeye failed to allege that the defendants caused a third party not to form a contractual or business relationship with Hawkeye. Defendants' Brief at 9. Hawkeye counters that the defendants' trespasses onto Hawkeye's property "substantially interfered" with the development of competing

power line projects, which caused Hawkeye to lose business opportunities. Plaintiff's Resistance Brief at 12. To put it another way, as a consequence of the defendants building power lines on Hawkeye's property, the defendants caused other projects that may have developed on Hawkeye's property to "fail to materialize." *See Id.*; *see also Iowa Coal Min. Co., Inc.*, 555 N.W.2d at 438. These factual allegations convince me that the fourth element was sufficiently pled.

Finally, as to the fifth element, Hawkeye alleged that it incurred damages from the above described lost business opportunities. The defendants do not contest Hawkeye's factual allegations concerning the fifth element. Based on the facts alleged, I find that the fifth element was sufficiently pled.

For the above reasons, I conclude Hawkeye has sufficiently pled facts to state a claim for tortious interference with prospective business relations. Therefore, defendants' motion to dismiss Count IV is denied.

### D.    *Malicious Prosecution*

The third issue I consider is whether Hawkeye has stated a claim upon which relief may be granted as to its claim for malicious prosecution. Pursuant to Rule 12(b)(6), defendants contend that Hawkeye's malicious prosecution claim fails "as a matter of law." Defendants' Brief at 11. Hawkeye responds by asserting that it has brought an "actionable malicious prosecution claim upon which relief can be granted," and for that reason, I should not dismiss Hawkeye's claim. Plaintiff's Resistance Brief at 12.

The Iowa Supreme Court has articulated six elements for a malicious prosecution claim. In the words of Iowa's highest court,

> To prevail on a claim for malicious prosecution, the plaintiff must establish each of the following six elements: (1) a previous prosecution, (2) instigation of that prosecution by the

defendant,[8] (3) termination of that prosecution by acquittal or discharge of the plaintiff, (4) want of probable cause, (5) malice on the part of defendant for bringing the prosecution, and (6) damage to plaintiff. *Sarvold v. Dodson,* 237 N.W.2d 447, 448 (Iowa 1976).

*Royce*, 423 N.W.2d at 200.

As to the first element, "a previous prosecution," the Iowa Supreme Court made clear in *Sergeant v. Watson Bros. Transp. Co.* that "[t]he prosecution contemplated" in a malicious prosecution case "is a *proceeding of a judicial character*." 52 N.W.2d 86, 91 (Iowa 1952) (emphasis added) (citing C.J.S., Malicious Prosecution, § 5). The Iowa Supreme Court has defined a "judicial proceeding" as "'one carried on *in a court of justice* [established][9] or recognized by law, wherein the rights of parties which are

---

[8] The second element is quoted in terms of "instigation" of the prior prosecution by the defendant. This quotation is from *Royce v. Hoening*, 423 N.W.2d 198, 200 (Iowa 1988), and is consistent with *Wilson v. Hayes*, 464 N.W.2d 250, 266 (Iowa 1990). By contrast, in *Whalen* and *Employers Mut. Cas. Co.*, the Iowa Supreme Court referred to the second element of a malicious prosecution claim as follows: "[I]nvestigation of [a previous] prosecution by the defendant." *Whalen v. Connelly*, 621 N.W.2d 681, 687–88 (Iowa 2000) (quoting *Employers Mut. Cas. Co. v. Cedar Rapids Television Co.*, 552 N.W.2d 639, 643 (Iowa 1996)). As I have explained before, the tort requires "instigation," not "investigation," of the prior prosecution by the defendant. *See Jensen v. Barlas*, 438 F.Supp.2d 988, 997 n.5 (N.D. Iowa 2006) (discusses the second element and the "erroneous metamorphosis of the second element" from "instigation" to "investigation").

[9] I edited the quotation from *Kennedy* because the Iowa Supreme Court misquoted the definition of "a judicial proceeding," as it is set forth in *Mills*, by excluding the word "established" from the definition, which qualifies "a court of justice." *Compare Kennedy v. Zimmerman*, 601 N.W.2d 61, 65 (Iowa 1999) *with Mills v. Denny*, 63 N.W.2d 222, 226 (Iowa 1954). While it may have been no more than a scrivener's error, excluding the word "established" from the definition of "a judicial proceeding" in *Mills* would seem to greatly expand the scope of "a judicial proceeding."

recognized and protected by law are involved and may be determined."[10] *Kennedy*, 601 N.W.2d at 65 (emphasis added) (quoting *Mills*, 63 N.W.2d at 226). The Iowa Supreme Court has further elaborated upon the issue by holding that "a judicial proceeding" encompasses "quasi judicial proceedings such as those before the industrial commissioner." *Id.* (citing *Tallman v. Hanssen*, 427 N.W.2d 868, 870 (Iowa 1988)). In reaching the decision to include the "quasi judicial proceeding" in *Tallman* under the definition of "a judicial proceeding," the Iowa Supreme Court reasoned that a proceeding before the industrial commissioner is "confrontational and judicial in nature." *Tallman*, 427 N.W.2d at 870.

I recognize that, although the IUB is an administrative agency, it "does provide for true court-like adversarial proceedings," and "many aspects of IUB proceedings mirror court proceedings." *Iowa Network Services, Inc. v. Qwest Corp.*, No. 4:02–CV–40156, 2002 WL 31296324, 5 n.10 (S.D. Iowa October 9, 2002). However, ITC Midwest's invocation of the crossing statute does not share sufficient attributes of a "judicial proceeding" for purposes of Hawkeye's malicious prosecution claim. ITC Midwest was merely seeking to determine if it constituted a public utility and obtain permission from the IUB to cross railroad tracks. ITC Midwest did not utilize the

---

[10] The Iowa Supreme Court has only defined "a judicial proceeding" in the context of an attorney's "judicial proceeding privilege." The "judicial proceeding privilege" is defined by the Restatement (Second) of Torts section 586:

> An attorney at law is absolutely privileged to publish defamatory matter concerning another in communications preliminary to a proposed judicial proceeding, or in the institution of, or during the course and as part of, a judicial proceeding in which he participates as counsel, if it has some relation to the proceeding.

*Kennedy*, 601 N.W.2d at 64 (quoting RESTATEMENT (SECOND) OF TORTS § 586 (1977)).

procedures that "mirror court proceedings" available before the IUB. Importantly, it was Hawkeye, not the defendants, who filed the complaint with the IUB. As the Iowa Supreme Court explained,

> *ITC Midwest complied with the procedures set forth in Iowa Code section 476.27 and Iowa Administrative Code chapter 199–42. ITC Midwest first obtained permission for the crossings from IUB.* The company then sent engineering drawings to Union Pacific, which approved the crossing plans. After receiving this approval, ITC Midwest sent Hawkeye Land three $750 statutory payments and notification of the planned crossing construction. Hawkeye Land refused the tendered payments. ITC Midwest, nevertheless, proceeded to construct the three crossings as permitted by the pay-and-go procedure of section 476.27.
>
> *On August 7, 2009, Hawkeye Land filed a formal complaint with IUB regarding these three crossings . . .*

*Hawkeye Land Co.*, 847 N.W.2d at 205 (emphasis added). All of these facts persuade me that ITC Midwest's use of the crossing statute was not a "proceeding of a judicial character" and, therefore, the defendants did not bring a previous prosecution against Hawkeye. *Sergeant*, 52 N.W.2d at 91.

Because there was not a previous prosecution to form the basis of Hawkeye's malicious prosecution action, Hawkeye's claim must fail.[11] It is unnecessary for me to

---

[11] In the alternative, even if ITC Midwest's invocation of the crossing statute was deemed a "previous prosecution" and "instigated" by ITC Midwest, ITC Midwest had "probable cause" to use the crossing statute. This is because both the ALJ, the IUB, and the district court ruled in ITC Midwest's favor and approved of ITC Midwest using the pay-and-go procedure under the crossing statute. *See* RESTATEMENT (SECOND) OF TORTS § 675(b) (1977) ("As in the case of the initiation of criminal proceedings, a decision by a competent tribunal in favor of the person initiating civil proceedings is conclusive evidence of

analyze the parties' arguments as to the remaining elements. Accordingly, I dismiss Hawkeye's claim for malicious prosecution.

## E.    Abuse Of Process

The fourth issue I consider is whether Hawkeye has stated a claim upon which relief may be granted as to its claim for abuse of process. Defendants contend that Hawkeye's claim for abuse of process is "equally unsustainable," and it also "fails as a matter of law." Defendants' Brief at 13, 15. Hawkeye counters by arguing that it has pled sufficient facts to allow me to draw the reasonable inference that the defendants are liable for abuse of process and, thus, Hawkeye's claim should not be dismissed. Plaintiff's Resistance Brief at 17.

Under Iowa law, to prove a claim of abuse of process, a plaintiff must show: "(1) use of the legal process, (2) in an improper or unauthorized manner, and (3) that damages were sustained as a result of the abuse." *Stew-Mc Development, Inc. v. Fischer*, 770 N.W.2d 839, 849 (Iowa 2009). The first two elements of an abuse of process claim "focus largely on the actual misuse of otherwise properly issued legal process, and are easily contrasted with the elements of malicious prosecution, which focus primarily on the malicious institution of criminal proceedings without probable cause." *Tomash v. John Deere Indus. Equipment Co.*, 399 N.W.2d 387, 390 (Iowa 1987). However,

___

probable cause. This is true although it is reversed upon appeal and finally terminated in favor of the person against whom the proceedings were brought."); *see also Schneider v. Rodgers*, 752 N.W.2d 33, 2008 WL 508481, *3 (Iowa Ct. App. Feb. 27, 2008) (unpublished op.) (finding that "it was not unreasonable for [the defendant] to make [the argument claimed to be maliciously prosecuted] in district court," and reasoned that "[t]he mere fact that a third judge ultimately rejected this argument," after two separate judges agreed with it, did not mean the defendant "did not have probable cause to resort to a court to settle this dispute.") Thus, based on the procedural history of this case, Hawkeye fails to show a lack of probable cause.

"[a]buse of process is similar to malicious prosecution in that the basis for both is the improvident use of the courts." *Wilson*, 464 N.W.2d at 266 (citing Note, *A Lawyer's Duty to Reject Groundless Litigation*, 26 WAYNE L.REV. 1561, 1565 (1980)). Moreover, abuse of process is "'the use of legal process, whether criminal or civil, against another primarily to accomplish a purpose for which it was not designed.'" *Fuller v. Local Union No. 106 of United Bhd. Of Carpenters & Joiners of Am.*, 567 N.W.2d 419, 421 (Iowa 1997) (citing *Palmer v. Tandem Mgmt. Servs., Inc.*, 505 N.W.2d 813, 817 (Iowa 1993)).

The fighting issue, here, is whether the defendants' use of the crossing statute, Iowa Code § 476.27, constitutes "use of the legal process" under the first element of Hawkeye's abuse of process claim, even though the defendants did not file a formal complaint with the IUB or a civil lawsuit against Hawkeye in a court of law. To assist me in my analysis below, I turn to *Van Stelton v. Van Stelton*, in which I recently analyzed, in detail, the first element of an abuse of process claim:

> The Iowa Supreme Court has also explained that "'[t]he first element [of an abuse-of-process claim, use of legal process,] can generally be shown by the use of a legal process against the plaintiff.'" [*Gibson v. ITT Harford Ins. Co.*, 621 N.W.2d 388, 398 (Iowa 2001)] (quoting [*Wilson*, 464 N.W.2d at 266]. The "legal process" in question can be civil or criminal. *Fuller*, 567 N.W.2d at 421 (citing *Palmer*, 505 N.W.2d at 817). Although the Iowa Supreme Court has "not precisely identified what action constitutes 'legal process' sufficient to satisfy the first element," *see id.* at 422, it appears reasonably clear that actually filing a civil lawsuit against the claimant would constitute the required "use of legal process" against the claimant. *Cf. id.* (concluding that filing a police report was insufficient, but suggesting that actually filing a criminal complaint would be sufficient).

994 F.Supp.2d 986, 992 (N.D. Iowa 2014).

Defendants rely on *Dobratz v. Krier*, No. 11–0120, 2011 WL 5867067, *1 (Iowa Ct. App. Nov. 23, 2011) (unpublished op.), a decision of the Iowa Court of Appeals, where the appellate court held that a claim for an abuse of process "requires misuse of a judicial process." *See* Defendants' Brief at 14. At the end of the appellate court's opinion in *Dobratz*, the court concluded by explaining its unwillingness to extend the abuse of process tort to include the abuse of administrative proceedings:

> During oral arguments, plaintiffs acknowledged Rhode Island is the only state supreme court to expand the abuse of process tort to administrative proceedings. We concur with the opinions expressed by the clear majority of the courts and *decline plaintiffs' request to follow Rhode Island and expand the tort of abuse of process to include administrative proceedings*. An actionable tort for abuse of process does not exist in Iowa unless there is *some improper use of the process of the court*. Accordingly, plaintiffs' claim fails.

*Dobratz*, 2011 WL 5867067 at *4 (emphasis added). Hawkeye replies by citing to *Gibson*, 621 N.W.2d at 398–99, and argues that "[t]he Iowa Supreme Court has allowed abuse of process claims arising out of administrative actions." Plaintiff's Resistance Brief at 16. Hawkeye's reliance on *Gibson* is misplaced.

In *Gibson*, the Iowa Supreme Court held that the issue of whether the claimant was entitled to punitive damages on his abuse of process claim was for the jury. *Gibson*, 621 N.W.2d at 399. *Gibson* does not stand for the proposition that an administrative procedure will give rise to an abuse of process claim in conflict with the later holding in *Dobratz*, 2011 WL 5867067 at *4. Rather, in *Gibson*, because the defendant did "not appeal[ ] from the judgment in favor of [the plaintiff] on [the abuse of process claim]," the Supreme Court did not allow the defendant to "challenge the judgment." *Id*. In this case, ITC Midwest's use of the crossing statute, as permitted by the IUB, was not a "use of the process of the court." *See Dobratz*, 2011 WL 5867067, *4. Rather, the evidence

shows that this case involves ITC Midwest's use of IUB's administrative regulations governing crossings in Iowa. Subsequent litigation was initiated in the court system only after Hawkeye decided to lodge its formal complaint with the IUB against ITC Midwest. *See Hawkeye Land Co.*, 847 N.W.2d at 205. The defendants never initiated a civil lawsuit or filed a complaint with the IUB against Hawkeye. Thus, the first element is not factually plausible.

For these reasons, Hawkeye has not sufficiently pled facts as to the first element of its abuse of process claim. I need not consider the remaining elements of this claim. Hence, Hawkeye's abuse of process claim is dismissed.

### F.    Claim For Attorneys' Fees

The fifth issue I consider is whether Hawkeye has stated a claim upon which relief may be granted as to its claim for attorneys' fees as to all six counts. The crux of the defendants' argument is two-fold: (1) no statute or contract provides attorneys' fees in this matter and common law attorneys' fees are not warranted; and (2) "every Court and administrative agency presented with [Hawkeye's] fee claim denied it." Defendants' Brief at 15–17. In reply, Hawkeye urges that the issue of attorneys' fees is "not ripe, as it is unknown at this time whether or not Hawkeye may receive attorneys' fees." Plaintiff's Resistance Brief at 17. Even if the matter is ripe, Hawkeye argues that the Iowa Supreme Court in *Hawkeye Land Co.*, 847 N.W.2d at 219, indicated that the issue of attorneys' fees will be resolved by later litigation, and Hawkeye is entitled to attorneys' fees based on "numerous legal theories" at common law. *Id.* at 18–19.

"Generally, a party has no claim for attorney fees as damages in the absence of a statutory or written contractual provision allowing such an award." *William v. Sickel*, 659 N.W.2d 572, 579 (Iowa 2003) (citing *Hockenberg Equipment Co. v. Hockenberg's Equipment & Supply Co.*, 510 N.W.2d 153, 158 (Iowa 1993)). Under common law,

"[c]ourts have recognized a rare exception to this general rule, however, 'when the losing party has acted in bad faith, vexatiously, wantonly, or for oppressive reasons.'" *Hockenberg Equipment Co.*, 510 N.W.2d at 158 (quoting *Alyeska Pipeline Serv. v. Wilderness Soc'y*, 421 U.S. 240, 258–59 (1975)). In seeking attorneys' fees under common law, a plaintiff "must prove that the culpability of the defendant's conduct exceeds the 'willful and wanton disregard for the rights of another'; such conduct must rise to the level of oppression or connivance to harass or injure another." *Id.* at 159–160. The decision of whether to award attorneys' fees "lies within the equitable power of the court[.]" *Id.* at 159 (citing *Alyeska Pipeline*, 421 U.S. at 257–58 n.30).

Here, Hawkeye does not cite to any statutory provisions or a written contract between the parties authorizing an award of attorneys' fees. *See* Plaintiff's Resistance Brief at 17–19. Therefore, Hawkeye must prove that its claim for attorneys' fees is one of the "rare" instances where common law attorneys' fees may be awarded. *See Hockenberg Equipment Co.*, 510 N.W.2d at 158. In advancing the contention that an award of common law attorneys' fees is justified, here, Hawkeye cites to *Williams*, 659 N.W.2d at 581. In *Williams*, the Iowa Supreme Court held that the county treasurer's conduct of fabricating documents after the start of trial and offering them as evidence at trial, with the intent to establish her case and defeat counterclaims against her, rose to the level of justifying attorneys' fees at common law. Plaintiff's Resistance Brief at 19. Drawing parallels to *Williams*, Hawkeye argues,

> It's completely plausible that the *Williams* fact pattern would be analogous to the fact pattern here where Defendants, for-profit entities, falsely asserted that they were a public utility in order to claim the State's sovereign power of eminent domain to take Hawkeye's Property to financially benefit themselves from knowingly illegal conduct and at Hawkeye's expense.

*Id.* "[A]ccepting as true all factual allegations in the complaint," as I am required to when considering a motion to dismiss for failure to state a claim, I find that Hawkeye has alleged a plausible factual basis as to the defendants' conduct to support an inference that this case is a "rare exception" in which recovery of attorneys' fees may be permissible under the common law. *See Palmer*, 666 F.3d at 1083; *see also* FED. R. CIV. P. 12(B)(6).

In addition, contrary to the defendants' arguments, the Iowa Supreme Court in *Hawkeye Land Co.* did not reject attorneys' fees for Hawkeye. Rather, as Hawkeye correctly asserted, the Iowa Supreme Court noted the issue would be resolved later: "Iowa Code chapter 6B governs the compensation owed Hawkeye for the crossing easements taken by ITC Midwest, as well as the related claims for attorney fees, costs and expenses." *Hawkeye Land Co.*, 847 N.W. at 219; *see also* Plaintiff's Resistance Brief at 18. The Iowa Supreme Court then continued by explaining that "[c]ompensation and entitlement to fees cannot be determined until the procedures of chapter 6B are invoked." *Id.*; *see also* IOWA CODE §§ 6B.33–34 (these statutory provisions under Iowa Code chapter 6B govern the award of costs and attorneys' fees in condemnation proceedings). The Iowa Supreme Court's decision does not forbid Hawkeye's present claim for attorneys' fees based on its six causes of action.

Hawkeye has sufficiently pled facts that may allow me to draw the reasonable inference that Hawkeye may be entitled to attorneys' fees from the defendants at common law. Thus, the defendants' motion to dismiss is denied.

## G.     Whether To Dismiss ITC Holdings From This Litigation

The sixth issue I consider is whether ITC Holdings should be dismissed from this action. The defendants argue that ITC Holdings should be dismissed from this action

because the power lines that Hawkeye complains about are owned and constructed by ITC Midwest, and only ITC Midwest attempted to use the crossing statute. Defendants' Brief at 18. "[ITC Midwest] is a Michigan limited liability corporation and ITC Holdings is its sole member."[12] *Id.* The defendants cite statutory provisions and case law from Michigan and Iowa in support of their argument that, as a member of the L.L.C., ITC Holdings is not liable for the actions of ITC Midwest. *Id.*

Without citing to any authority, Hawkeye counters that I should not dismiss ITC Holdings as ITC Holdings is included in each count of Hawkeye's petition, and ITC Holdings was engaged in the parties' previous litigation, which gave rise to several of Hawkeye's claims here. "Even if ITC Holdings proves it is not actually engaged in the illegal activity," Hawkeye writes, "[ITC Holdings] still knowingly benefits from ITC Midwest's illegal activities that harm Hawkeye." Plaintiff's Resistance Brief at 20. Furthering this point, Hawkeye alleges that "ITC Midwest has presumably passed profits" to ITC Holdings for the six years that ITC Midwest has illegally and freely used Hawkeye's property. *Id.* Those profits, Hawkeye argues, have "unjustly enriched" ITC Holdings. *Id.*

"One of the hallmark features of a limited liability company is the limited liability of its members and managers." *CCS, Inc. v. K & M Enterprises, L.L.C.*, No. 12–1213, 2013 WL 751284, *2 (Iowa Ct. App. Feb. 27, 2013) (citing Iowa Code § 489.304 (2009)). "A member or manager is not liable for the 'debts, obligations, or other liabilities of a limited liability company, whether arising in contract, tort, or otherwise' solely by reason of acting as a member or manager." *Id.* (citing Iowa Code § 489.304

---

[12] Elsewhere in the defendants' brief, they argue that Hawkeye's petition as to ITC Holdings should be dismissed "because its only involvement is as the owner (member) of [ITC Midwest]," and thus it is protected by the limited liability laws in Michigan and Iowa. Defendants' Brief at 2.

(2009)). Moreover, "[a] limited liability company is an entity distinct from its members." IOWA CODE § 489.104 (2009).

There are "exceptional circumstances" when a court will decide to "pierce the veil of a limited liability company and hold members or managers individually liable." *CCS, Inc.*, 2013 WL 751284 at \*2. For example, six factors support a court's decision to pierce the corporate veil, including: "(1) it is undercapitalized, (2) it is without separate books, (3) its finances are not separated from individual finances, (4) it pays an individual's obligations, (5) it is used to promote fraud or illegality, or (6) it is merely a sham." *Northeast Iowa Co-Op. v. Lindaman*, No. 13–0297, 2014 WL 69605, \*9 (Iowa Ct. App. 2014) (citing *Briggs Transp. Co., Inc. v. Starr Sales Co., Inc.*, 262 N.W.2d 805, 810 (Iowa 1978)); *see also Cemen Tech., Inc. v. Three D. Indus., L.L.C.*, 753 N.W.2d 1, 6 (Iowa 2008) (putting forth the six-step analysis for piercing an L.L.C.'s veil).

In this case, ITC Holdings is ITC Midwest's corporate parent, sole member, and owner, and it is shielded from liability under Iowa Code § 489.104. *Hawkeye Land Co.*, 847 N.W.2d at 204; *see also* Defendants' Reply Brief at 5. Hawkeye made no factual allegations as to any of the six factors listed above to support a piercing claim. *See CCS, Inc.*, 2013 WL 751284, at \*3 (affirming district court's decision to grant summary judgment in favor of individual members of L.L.C. as to their personal liability where no facts were presented to show a genuine issue as to any of the six factors for piercing the veil of a limited liability company).

In addition, although ITC Holdings is included in each count of Hawkeye's petition, and ITC Midwest's acts were alleged to "have been through concerted action with ITC Holdings," the facts alleged to support liability on behalf of ITC Holdings are scant. It is merely alleged that ITC Holdings "knowingly benefits from ITC Midwest's illegal activities," and ITC Midwest "presumably passed profits" to ITC Holdings.

26

Plaintiff's Resistance Brief at 20. Even if it is erroneous to apply the six factors of the piercing the corporate veil standard, facts as to ITC Holdings's specific involvement in ITC Midwest's construction and operation of the power lines are missing. I am left questioning whether ITC Holdings supervises any activities of ITC Midwest. Hawkeye also only equivocally asserts that ITC Holdings "presumably" received profits from ITC Midwest. *Cf. Broadcast Music, Inc. v. Mooney Hollow Saloon LLC, No. C13–1038*, 2014 WL 4384323, *2 (N.D. Iowa Sept. 3 2014) (slip op.) (denying motion to dismiss defendant, a member of an L.L.C., and finding plaintiff's allegations met *Iqbal*'s pleading requirements and stated a plausible claim for individual liability where plaintiff asserted that defendant had primary responsibility for operation management of L.L.C., had a right and ability to supervise activities of L.L.C., and had a direct financial interest in L.L.C.). Agreeing with the defendants, Hawkeye has failed to plead sufficient factual content as to ITC Holdings's involvement in this action.

In sum, Hawkeye did not present sufficient factual allegations that allow me to draw the reasonable inference that ITC Holdings has liability for the counts asserted in Hawkeye's petition. Thus, defendants' motion to dismiss ITC Holdings is granted.

## IV.    CONCLUSION

Accordingly, the defendants' motion to dismiss is granted in part and denied in part. I grant the defendants' motion to dismiss Hawkeye's Counts V and VI, but deny their motion to dismiss Hawkeye's Counts III and IV. Additionally, I deny the defendants' motion to dismiss the claim for attorneys' fees as Hawkeye sufficiently pled facts for the reasonable inference that attorneys' fees are recoverable under common law, and I granted the defendants' motion to dismiss ITC Holdings from this petition, as it is shielded by the limited liability laws of Iowa and the specific facts alleged to support liability on behalf of ITC Holdings were negligible. Pursuant to Local Rule 7(c), I deny

the parties' requests for oral argument because good cause has not been shown for such a hearing. *See* Local Rule 7(c). As I have stated before, "the issue on a Rule 12(b)(6) motion to dismiss for failure to state a claim upon which relief can be granted is not whether a claimant will ultimately prevail, but whether the claimant is entitled to offer evidence in support of his, her, or its claims." *Van Stelton*, 994 F.Supp.2d at 994 (citing *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1973)). I anticipate that, in round two, the inevitable motions for summary judgment, I will have the opportunity to revisit the arguments of the parties.

     **IT IS SO ORDERED.**

     **DATED** this 11th day of August, 2015.

MARK W. BENNETT
U.S. DISTRICT COURT JUDGE
NORTHERN DISTRICT OF IOWA